**Richard C. CASTLE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 76–1542.**

United States Court of Appeals, Fourth Circuit.

Submitted Aug. 25, 1976.

Decided Sept. 23, 1976.

Stephen L. Snyder, Baltimore, Md., for petitioner.

Philip Wilens, Chief, Government Regulations and Labor Section, Crim. Div., James P. Morris and John E. Harris, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BOREMAN, Senior Circuit Judge, RUSSELL, Circuit Judge, and FIELD, Senior Circuit Judge.

PER CURIAM.

We have before us for review, pursuant to the provisions of 8 U.S.C. § 1105a(a), a decision of the Board of Immigration Appeals dismissing an appeal from an order of an Immigration Judge which directed that Richard Christopher Castle, an alien, be deported because of his conviction of a crime involving moral turpitude.

Castle is a citizen of Trinidad, the country of his birth. He was admitted to the United States as a permanent resident alien on April 4, 1971. On August 4, 1974, he pleaded guilty in state court to one count of an information charging him with carnal knowledge of a female fifteen years of age,[1] a violation of Md.Ann.Code art. 27, § 464 (Repl.Vol.1976).[2] Castle was given a two-year sentence which was suspended and he was placed on supervised probation for the two-year period. On April 17, 1975, an order to show cause was served on Castle by the Immigration and Naturalization Service charging that he was subject to deportation because he had been convicted of a crime involving moral turpitude and had been sentenced to a term of confinement of more than one year within five years of his entry into the United States, a violation of 8 U.S.C. § 1251(a)(4).[3]

At a hearing held on May 21, 1975, the Immigration Judge[4] reviewed the undis-

1. On the morning of February 1, 1974, Richard Castle and Selwyn Maxwell, respectively 18 and 21 years old, were in the home of Joyce Johnson, 15 years of age, of Baltimore, Maryland. Miss Johnson stated that she wanted to purchase some cigarettes and all three individuals left her home to go to a neighborhood store. The store was closed and the two men took Miss Johnson to Maxwell's apartment where both allegedly engaged in sexual intercourse with her.

Later the same morning Miss Johnson's mother filed a complaint with the city police regarding the actions of Maxwell and Castle. The police initiated an investigation and an information was later filed against Maxwell and Castle charging them in different counts with forcible rape, carnal knowledge of and assault on a fifteen year old girl. Castle entered a plea of guilty in the Criminal Court of Baltimore to the charge of carnal knowledge, specifically admitting, upon interrogation by the judge, his sexual relationship with the girl.

2. The Maryland statute provides in pertinent part:

If any person shall carnally know any female not his wife, between the ages of fourteen and sixteen years, such carnal knowledge shall be deemed a misdemeanor and the offender being convicted thereof shall be punished by imprisonment in the house of correction for a term not exceeding two years, or be fined in a sum not exceeding five hundred dollars, or be both fined and imprisoned in the discretion of the court. . . .

Md.Ann.Code art. 27, § 464 (Repl.Vol.1976).

3. 8 U.S.C. § 1251(a)(4) provides:

(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial. . . .

4. Immigration Judges are authorized by the Attorney General to conduct evidentiary hearings

puted facts of alienage and conviction, and held that because the crime of carnal knowledge involved moral turpitude, the Immigration and Naturalization Act required that Castle be deported. An order for deportation was issued and Castle appealed to the Board of Immigration Appeals. Following a hearing, the Board dismissed the appeal, holding that carnal knowledge is a crime involving moral turpitude and that deportation is mandatory under the provisions of the Act when an alien is convicted of a crime involving moral turpitude. Thereafter Castle filed a petition for review in this court. He raises only one issue in his brief and the government has responded with a motion for summary affirmance.

 Castle contends that the deportation order should be set aside because the crime of carnal knowledge does not always involve moral turpitude and the present record does not disclose whether moral turpitude was *actually* involved in his criminal act. We do not agree. It is well established that the Maryland statutory offense of carnal knowledge of a female between the ages of fourteen and sixteen years "manifestly involves moral turpitude." *Bendel v. Nagle*, 17 F.2d 719, 720 (9 Cir. 1927). Furthermore, the statutory offense of carnal knowledge is a crime *malum in se.* It has been recognized that "[a]ll crimes *mala in se* involve moral turpitude." *Orlan-*

do v. Robinson, 262 F.2d 850, 851 (7 Cir.), cert. denied, 359 U.S. 980, 79 S.Ct. 898, 3 L.Ed.2d 929 (1959). Accepting "an act of baseness or depravity contrary to accepted moral standards," as a definition for "moral turpitude," *see Guerrero de Nodahl v. INS,* 407 F.2d 1405, 1406 (9 Cir. 1969), we hold that a man's carnal knowledge of a fifteen year old girl, not his wife, is so basically offensive to American ethics and accepted moral standards as to constitute moral turpitude *per se.* It is unnecessary for judicial or administrative officials to examine the extenuating factors which an offender might raise in his attempt to cleanse himself of the stigma of moral obliquity where the commission of the crime itself *must necessarily* involve moral turpitude. The inherent nature of the offense rather than the circumstances surrounding the transgression is the determinative element. *Velez-Lozano v. INS,* 150 U.S.App.D.C. 214, 463 F.2d 1305, 1307 (1972) (consensual sodomy); *Marciano v. INS,* 450 F.2d 1022, 1025 (8 Cir. 1971), *cert. denied,* 405 U.S. 997, 92 S.Ct. 1260, 31 L.Ed.2d 466 (1972) (statutory rape); *Guerrero de Nodahl v. INS,* 407 F.2d 1405, 1406 (9 Cir. 1969) (child beating); *Marinelli v. Ryan,* 285 F.2d 474, 476 (2 Cir. 1961) (touching a boy under 16 with sexual intent); *Pino v. Nicolls,* 215 F.2d 237 (1 Cir. 1954), *rev'd on other grounds, see Pino v. Landon,* 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955) (carnal abuse of a female child); *Ng Sui Wing,* 46 F.2d 755 (7 Cir. 1931) (common law rape).[5]

to determine the deportability of aliens under the Act. They are also empowered to order deportation based upon their findings. 8 U.S.C. § 1252(b); 8 C.F.R. § 242.8 (1975). The decision of an Immigration Judge can be appealed to the Board of Immigration Appeals, 8 U.S.C. § 1103(a); 8 C.F.R. § 242.21 (1975). The Court of Appeals for the judicial circuit in which the deportation order was issued has jurisdiction to review the determination of the Board of Immigration Appeals. 8 U.S.C. § 1105a(a).

5. In reaching our decision we are mindful of but not persuaded by Judge Eisele's vigorous dissent in *Marciano v. INS,* 450 F.2d 1022, 1026 (8 Cir. 1971). The dissenting opinion in that case was based on the argument that the Immigration Service and the reviewing court must look beyond the record of conviction to the facts surrounding the actual commission of the offense to determine whether moral turpitude was involved. This position is clearly contrary to the well established rule in federal courts that the Immigration Service and the reviewing court need not go beyond the record of conviction (the indictment, plea, verdict and sentence) to determine whether an alien is subject to deportation under 8 U.S.C. § 1251(a)(4). *See* cases cited above in the text. The reason for this rule is obvious. Congress did not intend to saddle the Immigration Service and the courts with the extremely difficult and time-consuming burden of developing the facts surrounding the commission of the crime for which the alien was convicted. *See Pino v. Nicolls, supra* at 245. An alien is subject to deportation under the statute for his *conviction of a crime* involving moral turpitude, not for his *commission of an act* involving moral turpitude. The focus of the statute is on the *type* of crime committed rather than on the factual context surrounding the actual commission of the offense. Where,

The Board properly determined that the carnal knowledge charge of which Castle was convicted is a crime involving moral turpitude. Our examination of the record convinces us that all of the requisites of the deportation statute, 8 U.S.C. § 1251(a)(4) have been satisfied.

Accordingly the government's motion for summary affirmance is granted and the deportation order is affirmed.

*Affirmed.*

as in the instant case, the nature of the crime is such that moral turpitude is inherently in-

volved in the offense, it is unnecessary to look beyond the record of conviction.